**Kerry YOUNG, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-89-243-CR.**

Court of Appeals of Texas,
Austin.

March 27, 1991.

Traci L. Molter, Law Offices of Allen Lee Click, P.C., Austin, for appellant.

Charles D. Penick, Criminal Dist. Atty., John M. Hawkins, Asst. Criminal Dist. Atty., Bastrop, for appellee.

Before CARROLL, C.J., and JONES and DAVIS,* JJ.

DAVIS, Justice (Retired).

After a jury found appellant guilty of aggravated robbery, the court assessed punishment at sixty years. Appellant urges three points of error, complaining of the failure to grant his motion for mistrial based on the admission of extraneous offenses; the denial of his motion to quash the indictment; and the failure to serve the accused, while in custody, with a certified copy of the indictment.

On the night of July 24, 1989, two men entered the Super S Food Store in Bastrop wearing stocking masks and brandishing a shotgun and a knife. Assistant Manager Parker testified that the man with the knife held it to Parker's throat and directed him to get the money out of the office. After taking money from a register, one of the men ordered Parker to open the safe. As Parker did so, the man with the gun, identified as appellant, beat Parker while the other man continued to hold the knife to his throat. Following the robbery, the men returned to Austin with the driver of the get-away vehicle and another codefendant.

■ In point of error one, appellant complains of the overruling of his motion for mistrial after the admission, "over objec-

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

tion, and contrary to the interest of justice," of evidence of prior misconduct and extraneous offenses. Appellant's motion for mistrial was made after the admission of the complained-of evidence. Except as noted in our review of the complained-of evidence, appellant did not voice any objection that was contemporaneous with the admission of the testimony.

Appellant contends that the "yes" answer given by Austin Police Officer Cary to the prosecutor's question, "Did you know who he was talking about?" suggests the Austin Police Department was familiar with appellant.

The next complained-of testimony occurred when the prosecutor offered certain photographs into evidence. The prosecutor asked Officer Cary, "Do I have to worry about a robbery occurring in Austin right now"? Before Officer Cary answered, the prosecutor proceeded to lay the predicate for introduction of a photograph of the house where the codefendants lived and from which incriminating evidence had been recovered.

Appellant's next complaint arose when the prosecutor asked Officer Cary about recommendations he had made relative to the codefendants. The record reflects the following exchange:

OFFICER CARY: ... my only action in that regard was to talk to the Chief of Police of Bastrop, Texas and I asked him to help me arrange for a personal bond because I thought it was in the better interest of justice I guess for lack of better words that they be released and that they be witnesses in not only this case but some other pending cases.

PROSECUTOR: Okay. And why is that? Please tell the jury just to make sure that no one missed it.

OFFICER CARY: That is because they're witnesses to the offense and it's my opinion that when this offense took place in Bastrop, Texas it—

---

Tex.Gov't Code Ann. § 74.003 (1988).

MR. BOGART: —Excuse me. Your Honor, I'm going to object to—

THE COURT: —I'm going to ask that the District Attorney ask another question.

No basis was given for the objection nor did the court ever rule on it.

Appellant directs our attention to testimony of Austin Police Officer Beechinor recounting that he was asked by the Bastrop Police Department whether "we had any cases that were similar and any suspects developed in those offenses?" Without stating names, the officer answered, "We advised them that we did."

Appellant complains of testimony about the circumstances surrounding his arrest and his visit to the Austin Police Department to claim two vehicles that had been impounded by the police. Beechinor testified that he had known that the parole board was in the process of issuing a revocation warrant for appellant. After appellant left, Beechinor was able to confirm that the warrant had been issued and officers proceeded to the site where the vehicles were impounded and arrested appellant and the codefendants.

Appellant next directs our attention to the testimony of Beechinor that appellant arrived at the impound site in a vehicle that was determined to have been stolen and that the vehicle had been returned to its owner in Killeen. The officer further testified that appellant was booked into jail on a parole revocation warrant.

Finally, appellant complains of Beechinor's testimony on cross-examination. After it was developed that the officer had prior contact with codefendants Mixon and Hines, counsel asked, "What was that in relation to?" and Beechinor responded, "To two separate robbery investigations in which the defendant was subsequently charged." Defense counsel then elicited testimony that the codefendants were not charged in these robberies and passed the witness.

Texas Rules of Appellate Procedure, Rule 52(a) provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

Tex.R.App.P. 52(a) (Pamph.1990).

Two capital cases, *Jacobs v. State*, 787 S.W.2d 397 (Tex.Cr.App.), *cert. denied,* —— U.S. ——, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990), and *Woolls v. State*, 665 S.W.2d 455 (Tex.Cr.App.1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984), reflect the necessity of contemporaneously objecting to the admission of extraneous offenses to preserve error for review. In *Jacobs*, a justice of the peace was asked what offense the defendant was charged with during the guilt-innocence stage of the trial. The response was, "Well, I have approximately five charges." It was not until the conclusion of the direct testimony of the witness that the defendant objected to the alleged error. The Court held that no error was preserved, stating that an objection must be made at the first opportunity and the objection must be contemporaneous with the testimony of other charges. *Jacobs*, 787 S.W.2d at 406. In *Woolls*, the defendant did not object until after a witness had testified extensively to the defendant's use of drugs. The Court of Criminal Appeals concluded that the objection was not contemporaneous with the testimony and error was not preserved in spite of a motion in limine. *Woolls*, 665 S.W.2d at 470.

In this case, the only instance in which an objection was voiced occurred following Officer Cary's testifying to the recommendation that certain codefendants be placed on personal bonds and released so that they could be witnesses in another case. The objection, "I'm going to object," failed to state the specific grounds for the ruling

desired. The appellant did not obtain a ruling on his general objection, the court directing the prosecutor to ask another question. Appellant's point of error number one is overruled.

■ Appellant contends the refusal to grant his motion to quash the indictment "upon the prosecutor's refusal to clarify the manner and means of crime alleged in the indictment ... deprived appellant of fair notice of the charges brought against him."

Omitting names, dates and formal parts, the indictment alleges aggravated robbery was committed by the following means:

... did then and there INTENTIONALLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN AND MAINTAIN CONTROL OF SAID PROPERTY, THREATEN AND PLACE RALPH PARKER IN FEAR OF IMMINENT BODILY INJURY AND DEATH, AND THE DEFENDANT DID THEN AND THERE USE AND EXHIBIT A DEADLY WEAPON, TO–WIT: KNIFE, THAT IN THE MANNER OF ITS USE AND INTENDED USE WAS CAPABLE OF CAUSING DEATH AND SERIOUS BODILY INJURY.

... DID THEN AND THERE INTENTIONALLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN AND MAINTAIN CONTROL OF SAID PROPERTY, THREATEN AND PLACE RALPH PARKER IN FEAR OF IMMINENT BODILY INJURY AND DEATH, AND THE DEFENDANT DID THEN AND THERE USE AND EXHIBIT A DEADLY WEAPON, TO–WIT: FIREARM.

The thrust of appellant's contention is that the court erred in failing to quash the indictment because the prosecutor did not indicate which of the conjunctively alleged theories or means the State would rely on in prosecuting the offense, thereby depriving appellant of notice of the particular acts with which he was charged.

■ Tex.Pen.Code Ann. § 29.03 (Supp. 1991), provides that robbery, as defined in § 29.02 of the Code, becomes aggravated robbery if the offender "uses or exhibits a deadly weapon."[1] The indictment charges only one offense, aggravated robbery. The use of a deadly weapon is the element that elevates the offense to aggravated robbery in the two paragraphs of the indictment.

■ The general rule, subject to rare exceptions, is that an indictment which tracks the words of the statute is legally sufficient. *Lewis v. State,* 659 S.W.2d 429, 431 (Tex.Cr.App.1983). The appellant does not suggest, nor do we find, that the indictment fails to track the language of the statute.

Unlike *Ferguson v. State,* 622 S.W.2d 846 (Tex.Cr.App.1980), cited by appellant, the instant case relies on only one legal theory in alleging aggravated robbery: the use of a deadly weapon. In *Ferguson,* the court held that a motion to quash should have been granted because the defendant was not given notice of which statutory theories the prosecution planned to establish. 622 S.W.2d at 848. Similarly, *Drumm v. State,* 560 S.W.2d 944 (Tex.Cr. App.1977), held that the trial court should have granted a motion to quash in a driving-while-license-suspended case because the information failed to allege which of the statutory means formed the basis for the revocation. 560 S.W.2d at 947. In *Spelling v. State,* 719 S.W.2d 404 (Tex. App.1986), *rev'd and remanded on other grounds,* 770 S.W.2d 571 (Tex.Cr.App.1988) (unpub'd op.), the court held the defendant's failure to file a timely motion to quash waived all non-jurisdictional defects. 719 S.W.2d at 406. However, the court, in dictum, stated that where the statutory definition of the crime provides for more than one manner of committing a crime, the State, upon timely motion to quash, must allege the particular statutory means of committing the offense. *Id.*

---

1. A firearm is per se a deadly weapon. *Giles v. State,* 617 S.W.2d 690, 691 (Tex.Cr.App.1981). A knife is a deadly weapon when the manner of its use or its intended use is capable of causing death or serious bodily injury. *See Orosco v. State,* 590 S.W.2d 121, 124 (Tex.Cr.App.1979).

*DeVaughn v. State,* 678 S.W.2d 143, 149 (Tex.App.1984), *aff'd in part and remanded on other grounds,* 749 S.W.2d 62 (Tex. Cr.App.1988), is distinguishable because the court in that case concluded that the defendant's motion to quash a burglary indictment should have been granted where there was an absence of facts alleged to bar a subsequent prosecution.

█ The indictment in the instant case contains only one count charging appellant with aggravated robbery. An indictment containing two paragraphs, alleging different means by which an offense was committed, under a single statutory theory, is not subject to a motion to quash. *See Sidney v. State,* 560 S.W.2d 679, 681 (Tex. Cr.App.1978); *Garcia v. State,* 537 S.W.2d 930, 932 (Tex.Cr.App.1976); *Mixon v. State,* 632 S.W.2d 836, 839 (Tex.App.1982, pet. ref'd). We hold that there was no lack of notice to appellant of the charges brought against him. Appellant's second point of error is overruled.

█ In his third point of error, appellant complains that, while in custody, he was not served with a certified copy of the indictment, depriving him of notice of the charges against him and the ability to prepare for trial. Appellant directs our attention to the fact that the record does not contain a return of the indictment reflecting when and how the indictment was served.

Appellant relies on the provisions of Tex. Code Cr.P.Ann. arts. 25.01 and 25.02 (1989). Article 25.01 addresses the matter of service of a felony indictment where the accused is in custody. Article 25.01 provides:

> In every case of felony, when the accused is in custody, or as soon as he may be arrested, the clerk of the court where an indictment has been presented shall immediately make a certified copy of the same, and deliver such copy to the sheriff, together with a writ directed to such sheriff, commanding him forthwith to deliver such certified copy to the accused.

Article 25.02 concerns the duty of the sheriff to deliver the indictment to the accused and make a return thereon. Upon receipt of such writ and copy, the sheriff shall immediately deliver such certified copy of the indictment to the accused and return the writ to the clerk issuing the same, with his return thereon, showing when and how the same was executed.

No objection was voiced by appellant at trial, complaint of failure to be served with a copy of the indictment being urged for the first time on appeal. The record is silent regarding service. Appellant urges the provisions of the statutes are mandatory and that a conviction may not be sustained where no copy of the indictment is served on the accused.

Appellant relies on *Holden v. State,* 44 Tex.Crim. 382, 71 S.W. 600 (1903), and *Johnson v. State,* 567 S.W.2d 214 (Tex.Cr. App.1978), for the proposition that service upon a defendant in custody is mandatory. In *Holden,* the defendant who had been in custody objected to not having been served with a copy of the indictment before being required to make any announcement at the beginning of the trial. The court found that the defendant had a guaranteed right to an opportunity to prepare for trial and to determine the necessity of filing written pleadings. *Holden,* 71 S.W. at 600.

In *Johnson,* the defendant requested a continuance because he had not been served with a copy of the indictment upon which prosecution was based, pursuant to the requirements of Tex.Code Cr.P.Ann. art. 27.12 (1989). Article 27.12 requires that a defendant be afforded ten days after service of indictment to prepare for trial. The court noted that the defendant had the "absolute right to be served with a copy of the indictment" under Tex.Code Cr.P.Ann. arts. 25.01 and 25.02. *Johnson,* 567 S.W.2d at 215.

In both *Holden* and *Johnson,* the defendants complained at trial about failure to be served with copies of indictments. In *Bonner v. State,* 29 Tex.App. 223, 15 S.W. 821 (1890), it was held that after verdict it was too late to object for the first time that no copy of the indictment had been served on the defendant. 15 S.W. at 821. In *Oliver v. State,* 646 S.W.2d 242 (Tex.Cr. App.1983), the prosecutor refiled the infor-

mation with additional allegations on the day of the trial. Defendant complained that he had not been afforded the requisite time to prepare for trial after being served with the charging instrument. The court held that, under these circumstances, the defendant was not required to show harm: "he must merely show that he made an affirmative request for the allowed statutory time, and such was refused." *Oliver*, 646 S.W.2d at 245.

The record in the instant case is devoid of any complaint having been made at any stage of the trial that defendant had not been served with a copy of the indictment. We hold that a complaint made for the first time on appeal is too late to preserve error. *See* Rule 52(a).

We further note that the record tends to negate appellant's claim that he was not given notice of the offense charged against him in order that he might prepare for trial. Indictment was filed on August 8, 1989, and trial began on October 9, 1989. On August 18, 1989, appellant filed a motion to quash the indictment setting forth eleven distinct contentions of defects in the indictment. Appellant's third point of error is overruled.

The judgment is affirmed.